UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANE DOE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2963** |
| **ORE DUCKWORTH, ET AL.** | **SECTION "C" (3)** |

### ORDER AND REASONS[1]

Before the Court is defendants Ore Duckworth ("Duckworth") and Duckworth Properties, L.L.C.'s ("Duckworth Properties") Motion for Summary Judgment. Rec. Doc. 40. Plaintiffs Jane Doe ("Doe") and the Greater New Orleans Fair Housing Action Center ("FHAC") oppose this Motion. Rec. Doc. 52. Having considered the record, the memoranda of counsel, and the applicable law, this Motion is GRANTED IN PART and DENIED IN PART for the following reasons.

### I. BACKGROUND

Doe resided in an apartment she rented from Duckworth, sole proprietor of Duckworth Properties, from December 2008 to January 2010. Rec. Doc. 1 at 4; Rec. Doc. 40-3 at 2. Doe alleges that throughout her residence there, Duckworth subjected her to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment. Rec. Doc. 1 at 4. She alleges that he made unwanted sexual advances toward her (including touching her breast); proposed that he would forgive her rent or make repairs in exchange for sexual activity; proposed that he would not evict her after she fell behind on rent in exchange for sexual intercourse; took steps to

---

[1] Ashley Stockton, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

evict Doe after she refused his sexual advances; and made threats that he would grant or deny housing benefits to her based upon her submission to his sexual advances. Rec. Doc. 1 at 4-5.

Doe also maintains that Duckworth subjected at least three other female tenants to similar harassment during the course of her tenancy. Rec. Doc. 1 at 5. One of these tenants made a complaint of sexual harassment against Duckworth but later recanted it in a signed affidavit. Rec. Doc. 40-3 at 3; Rec. Doc. 40-8 at 1. A number of other tenants also signed affidavits saying they had never been sexually harassed by Duckworth. Rec. Doc. 40-10; Rec. Doc. 40-11; Rec. Doc. 40-12; Rec. Doc. 40-13.

In February 2010, Doe sought assistance from the FHAC to investigate Duckworth's alleged conduct. Rec. Doc. 1 at 6. The FHAC concluded that Duckworth's conduct constituted discriminatory behavior. Rec. Doc. 1 at 6. With the FHAC's assistance, Doe filed a complaint against Duckworth with the United States Department of Housing and Urban Development ("HUD"), which HUD referred to the Louisiana Department of Justice ("LADOJ") for investigation. The LADOJ determined that there was sufficient evidence to believe that Duckworth had discriminated against Doe in the terms and conditions of her rental based on sex. Rec. Doc. 1 at 6.

Doe and the FHAC claim that Duckworth's alleged conduct violates the Fair Housing Act. Rec. Doc. 1 at 7. The FHAC represents itself as an aggrieved person under the Act, claiming that it has also been injured by Duckworth's conduct and suffered damage as a result. Rec. Doc. 1 at 8.

Duckworth contends in his Motion for Summary Judgment that he never made the alleged comments toward Doe or touched her inappropriately. Rec. Doc. 40-3 at 5; Rec. Doc. 40-4 at 18. Additionally, he argues that even if he had engaged in the conduct as Doe describes it, his alleged

2

actions would not meet the standard required for sexual harassment claims under the FHA. Rec. Doc. 40-3 at 6.

## II. LAW AND ANALYSIS

### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2502, 2510, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the court should view the evidence in the light most favorable to the non-moving party. *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) (*citing Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). Summary judgment is appropriate only if a reasonable jury could not return a verdict for the non-moving party. *Delta & Pine Land Co.*, 530 F.3d 395, 399 (citing *Anderson*, 477 U.S. at 248). If the moving party satisfies its initial burden of showing that there is no genuine issue of material fact, the burden "shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First. Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

### B. FHA Claims

The Fair Housing Act ("FHA") prohibits gender-based discrimination against any person in the terms, conditions, or privileges of the rental of a dwelling or in the provision of services or

3

facilities in connection with the rental of a dwelling. 42 U.S.C. § 3604(b). This prohibition may be violated either by treating one gender less favorably (disparate treatment) or by sexual harassment. *Honce v. Vigil*, 1 F.3d 1085, 1088 (10th Cir. 1993). The Fifth Circuit has not yet addressed the issue of sexual discrimination in the context of the Fair Housing Act. Therefore we look to other circuits for guidance. Federal courts have recognized two types of sexual harassment that are covered by the FHA: (1) *quid pro quo* harassment; and (2) hostile environment harassment. *See Quigley v. Winter*, 598 F.3d 938, 946-48 (8th Cir. 2010); *Honce*, 1 F.3d at 1089.

Doe argues that a fact-finder could reasonably determine that Duckworth engaged in unlawful sex discrimination under the FHA both by engaging in *quid pro quo* sexual harassment and by subjecting her to a hostile housing environment. Rec. Doc. 52.

### *1. Quid Pro Quo Harassment*

*Quid pro quo* harassment occurs "when housing benefits are explicitly or implicitly conditioned on sexual favors" or when the rejection of sexual advances by a landlord results "in an adverse consequence" for the tenant. *Krueger v. Cuomo*, 15 F.3d 487, 491 (7th Cir. 1997); *Honce*, 1 F.3d at 1089. A successful *quid pro quo* claim may be established by a single incident of *quid pro quo* harassment. *See Quigley*, 598 F.3d at 947-48; *Krueger*, 115 F.3d at 491. There must, however, be a causal connection between a plaintiff's rejection of alleged sexual advances and the adverse consequence to support a claim for *quid pro quo* harassment. *See Honce*, 1 F.3d at 1089-90.

Doe contends that Duckworth conditioned the terms of her tenancy upon his sexual advances. Rec. Doc. 1 at 4. She states in her complaint that Duckworth offered to pay her other bills or forgive rental payments in exchange for naked photographs or sexual activity. Rec. Doc. 1 at 4. She alleges that there were several instances where Duckworth refused to make repairs to

the apartment after Doe rejected his advances. Rec. Doc. 1 at 4. She additionally alleges that Duckworth took steps to evict her after she refused his propositions. Rec. Doc. 1 at 4-5. She maintains that these allegations amount to *quid pro quo* harassment.

In *Honce*, the plaintiff rejected social propositions made by her landlord before moving on to the property. *Honce*, 1 F.3d at 1087. The plaintiff and landlord subsequently had several confrontations over a plumbing problem and the building of a fence that ended in the plaintiff leaving the property after two weeks. *Id.* at 1088. She claimed that the landlord's actions amounted to sexual discrimination and harassment that forced her to leave. *Id.* The court held there was no *quid pro quo* harassment because the plaintiff failed to provide any evidence of a connection between her rejection of the propositions and the landlord's subsequent actions. *Id.* at 1089.

This Court finds that like the plaintiff in *Honce*, Doe fails to present evidence of a causal connection between her rejection of Duckworth's purported advances and her eviction or any other adverse consequence she allegedly suffered. Doe told the eviction judge that she was being evicted for failing to pay her rent and for refusing to write an apology letter. Rec. Doc. 40-7 at 4-6. She admits in her deposition testimony that there was no mention of sex in connection with this eviction. Rec. Doc. 40-6 at 12-13, 19. She alleges that Duckworth previously threatened to evict her numerous times if she did not engage in sexual activity with him, but admits that despite her rejection of these alleged advances, he never took any steps to evict her until January 2010 upon her failure to pay rent. Rec. Doc. 40-6 at 23.

Although she alleges in her complaint that repairs were withheld because she refused Duckworth's sexual advances, her deposition testimony suggests that Duckworth did attempt to address many of the needed repairs, though not always to Doe's satisfaction. Rec. Doc. 1 at 4; Rec.

Doc. 40-6 at 9-11. Doe additionally admits that Duckworth never suggested to her that if she had sex with him any remaining repairs would be addressed. Rec. Doc. 40-6 at 11. In Doe's deposition testimony she only actually states the *quid pro quo* harassment occurred when she fell behind on other bills and asked if Duckworth would let her slide on rent payments as a result. Rec. Doc. 40-6 at 11-12. She claims that she rejected Duckworth's alleged advances regarding this situation but admits that it's possible he occasionally allowed her to pay the rent late or make payments twice monthly to ease her financial burden. Rec. Doc. 40-6 at 11-12. This Court finds no indication that Duckworth actually conditioned any housing benefits on sexual favors or committed an adverse housing action against Doe for her alleged refusal of his advances.

Doe fails to point to a single specific instance where she was allegedly explicitly or implicitly propositioned and suffered an adverse consequence as a direct result of her rejection. Rec. Doc. 52. She also fails to convincingly allege that Duckworth conditioned any housing benefits on her acquiescence to his propositions. Conclusional allegations such as Doe's are insufficient to create material questions of fact. *Honce*, 1 F.3d at 1090 (citing *1488 Inc. v. Philsec Inv. Corp*, 939 F.2d 1281, 1289 (5th Cir. 1991)). Therefore the Motion for Summary Judgment as to the *quid pro quo* harassment claim is GRANTED.

### 2. Hostile Environment

A claim of hostile housing environment under the FHA "is actionable 'when the [alleged] offensive behavior unreasonably interferes with [the tenant's] use and enjoyment of the premises.'" *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996) (quoting *Honce*, 1 F.3d at 1090). The harassment must be "sufficiently severe or pervasive" to alter the conditions of the housing arrangement. *Quigley*, 598 F.3d at 947 (citing *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364-65

(8th Cir. 2003)); *DiCenso*, 96 F.3d at 1008; *Honce*, 1 F.3d at 1090 (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987)). Casual or isolated incidents of discriminatory conduct may not be sufficient to raise a cause of action. *Honce*, 1 F.3d at 1030 (quoting *Hicks*, 833 F.2d at 1414). Evidence of harassment of other female tenants is relevant to a plaintiff's claim. *Honce*, 1 F.3d at 1030 (citing *Hicks*, 833 F.3d at 1415).

Federal courts interpreting sexual harassment under the Fair Housing Act have looked to Title VII hostile work environment cases for instruction on how to analyze hostile housing environment claims. *See DiCenso*, 96 F.3d at 1008-09; *Honce*, 1 F.3d at 1089-90. In hostile work environment cases, the Fifth Circuit has held that the totality of the circumstances must be examined – the "required showing of severity . . . varies inversely with the pervasiveness or frequency of the conduct." *Lauderdale v. Tex. Dept. of Crim. Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007).

Applying these standards to the fair housing context, the Court finds that a number of material facts remain in dispute regarding Doe's hostile housing environment claim. The Fifth Circuit has held that "frequent incidents," even if not severe, can amount to pervasive harassment under Title VII. *Id.* Doe alleges that Duckworth harassed her for over a year and asked her to take naked pictures of herself "several" times. Rec. Doc. 40-6 at 9, 21. She also alleges that Duckworth suggested that she should come out and "play" with him and said "frequent[ly]" that he wanted to touch her breasts. Rec. Doc. 40-6 at 9, 21. Duckworth denies these allegations. Rec. Doc. 40-3 at 5. If the propositions did occur (which is a disputed fact), it is unclear based on the parties' testimony exactly how often the conduct occurred and whether it was "sufficiently . . . pervasive"

7

to state a hostile housing environment claim. *Honce*, 1 F.3d at 1090. Whether the conduct occurred and whether it was pervasive therefore remain issues of material fact.

Whether Duckworth touched Doe's breast also remains in dispute. Doe alleges that Duckworth "grabbed" or "nudged" her breast on one occasion. Rec. Doc. 40-6 at 21. Duckworth denies doing this. Rec. Doc. 40-4 at 18. If the contact did occur, the fact that he touched a private area of her body is relevant. Touching an intimate area of a plaintiff's body is conduct that can be sufficiently severe to create a hostile work environment under Title VII, even if it is an isolated incident. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 435-36 (5th Cir. 2005). The Court adopts this reasoning as applicable to hostile housing environment claims under the Fair Housing Act. Therefore whether Duckworth "grabbed" or "nudged" Doe's breast is a genuine issue of material fact because it pertains to the severity of the alleged harassment.

Because evidence of harassment of other female tenants is relevant to a plaintiff's claim, whether another tenant was sexually harassed by Duckworth is also a genuine issue of material fact. *Honce*, 1 F.3d at 1030 (citing *Hicks*, 833 F.3d at 1415). Another tenant initially brought a sexual harassment complaint similar to Doe's against Duckworth, but later recanted her accusations in a signed affidavit. Rec. Doc. 40-3 at 13-14; Rec. Doc. 40-8. Despite this affidavit, however, the tenant and her fiancé continue to maintain that the harassment occurred. Rec. Doc. 40-16 at 7; Rec. Doc. 52-7 at 1-3. The tenant alleges that Duckworth paid her to sign the affidavit. Rec. Doc. 40-16 at 9. She states that she did not provide the information contained in the affidavit and that she was not aware that signing it meant she was withdrawing her harassment complaint. Rec. Doc. 40-16 at 9. Duckworth admits that he paid the tenant but denies her sexual harassment allegations and characterizes her fiancé's and her behavior as extortion. Rec. Doc. 40-3 at 14; Rec. Doc. 40-4 at 20-

22. Whether this tenant was sexually harassed by Duckworth therefore remains an issue of material fact.

Given the conflicting testimony, a number of facts material to the outcome of this case remain in dispute regarding the hostile housing environment claim. The existence of these facts precludes summary judgment. *See* FED. R. CIV. P. 56(a). Whether Doe's allegations are too vague or not properly supported is ultimately a credibility determination that is "more appropriately done by the trier of fact." *Harvill*, 433 F.3d at 436. The Motion for Summary Judgment as to the hostile environment claim should therefore be DENIED.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment filed by Ore Duckworth and Duckworth Properties, L.L.C. is GRANTED as to the *quid pro quo* harassment claim and DENIED as to the hostile housing environment claim. Rec. Doc. 40.

New Orleans, LA, this 12th day of August, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**